# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

GREGORY WISE,

          Petitioner,     :     Case No. 1:13-cv-021

  - vs -                             District Judge William O. Bertelsman
                                       Magistrate Judge Michael R. Merz

ERNIE MOORE, WARDEN,
 Lebanon Correctional Institution

                                   :

          Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner Gregory Wise's Objections (Doc. No. 22) to the Magistrate Judge's Report and Recommendations recommending the Petition be dismissed with prejudice (the "Report," Doc. No. 18). Judge Bertelsman has recommitted the case for reconsideration in light of the Objections (Doc. No. 23).

**Ground One: Improper Joinder**

In his First Ground for Relief, Wise claims his Fourteenth Amendment Due Process rights were violated when the Common Pleas Court allowed the two indictments for sexual misconduct with two different victims, A.T. and J.R., to be tried together.

The Warden asserted this claim was procedurally defaulted because it had not been fairly presented as a federal constitutional claim to the state courts (Return of Writ, Doc. No. 11, PageID 46-53). Wise admitted this was so, but argued it was not a procedural default "because it

1

is not common practice to argue this type of Constitutional violation; although the errors definitely violate the due process clause of the Fourteenth Amendment of the U.S. Constitution." (Reply, Doc. No. 16, PageID 645.)

The Report noted that the cognate assignment of error in the state courts argued "[c]onsolidation was improper as evidence of each individual crime should have been inadmissible under Evid. R. 404(B) and the charges were not separate and distinct." (Report, Doc. No. 18, PageID 655, quoting Appellate Brief, Return of Writ, Doc. No. 11-1, PageID 89.) The Report noted in the alternative that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Id.* citing *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

Wise objects that the procedural default of lack of fair presentation can be excused if the claim is so novel that its legal basis is not reasonably available to counsel. (Objections, Doc. No. 22, PageID 680), *citing Murray v. Carrier*, 477 U.S. 478 (1986), and *Reed v. Ross,* 468 U.S. 1 (1984). What *Murray* actually held was that failure of an attorney to raise a claim, so long as that failure did not amount to ineffective assistance of counsel, did not excuse the failure to raise the claim. Thus Wise's citation of *Murray* cuts against his argument here: to the extent the constitutional claim he now makes in Ground One was so uncommon as not to be "available," the failure to make it does not excuse the procedural default in failing to make it.

However, in *Reed v. Ross, supra*, the Supreme Court did hold "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." 468 U.S. at 16.

> If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law.

> Appellate courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones. Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable.

*Id.*, quoting *Ross v. Reed*, 704 F.2d 705, 708 (4th Cir. 1983)(Haynsworth, C.J.). Under *Reed v. Ross*, then, the novelty of Wise's constitutional argument is sufficient to excuse his failure to present it on direct appeal.

In order for cause to excuse a procedural default, a habeas petitioner must show that the alleged constitutional error prejudiced him. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). That is, a habeas petitioner must show both cause and prejudice to excuse a procedural default. *Id.* Wise has not done so because he has not cited any clearly established Supreme Court precedent which would have prevented the joinder of offenses which occurred here or the admission of other acts evidence of which he complains.

Regarding joinder, Wise complains of what he calls "judicial legislation." (Reply, Doc. No. 16, PageID 637-40.) His theory is that Ohio Revised Code § 2907.02 prevents joinder of rape cases, whatever may be the law on other kinds of cases. As argued by Wise, the statute provides in pertinent part,

> Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Wise's argument is that "[s]ince this law is Constitutional, the Judicial Branch does not have the power to add this language themselves and allow joinder of Rape indictments by saying joinder is satisfactory if it is separate and distinct" (Reply, Doc. No. 16, PageID 640, italics omitted). He further asserts "[t]his violates the principle of separation of powers and therefore violated Mr. Wise's 14th [Amendment] Due Process Rights." *Id*.

There are many fallacies in this argument.

First of all, the statute in question does not purport to speak to joinder of indictments for trial. As the court of appeals held in this case, joinder of indictments against the same defendant is favored and specifically permitted by Ohio R. Crim. P. 8. All of the Ohio Criminal Rules are adopted by the Ohio Supreme Court subject to approval of the General Assembly which had the power, had it believed there was a conflict between Rule 8 and Ohio Revised Code § 2907.02, to resolve the conflict and provide against joinder in the rape statute. It did not do so. It was therefore no "judicial legislation" for the Ohio courts in this and other cases to interpret them consistently with one another.

Secondly, the United States Constitution does not forbid what Wise calls "judicial legislation," i.e., interpretation of statutes to make them consistent with other parts of the law. Nor does the Fourteenth Amendment impose on the States any particular scheme of separation of powers.

As Wise admits in his Objections, every Ohio court of appeals when considering joinder of rape indictments has permitted the joinder if Ohio R. Crim. P. 8 is satisfied, regardless of the language of Ohio Revised Code § 2907.02 (Objections, Doc. No. 22, PageID 682), citing, *inter alia, State v. Schaim*, 65 Ohio St. 3d 51 (1992). Wise complains:

> If the Ohio Supreme Court condones this judicially legislated test
> that violates the constitution, then, until shown otherwise, all lower

4

> courts will decide their cases in accordance with this decision, and appeal attorneys will form their appeal grounds in accordance also; and they cannot be expected to resort to unconventional tactics.

(Objections, Doc. No. 22, PageID 683). Of course, that is exactly what we expect of lower courts – that they follow the Ohio Supreme Court – until the United States Supreme Court says different.

Third, the Supreme Court has never held there is any constitutional violation in the use of "other acts" evidence. *Bugh v. Mitchell*, 329 F.3d 496 (6th Cir. 2003).

Fourth, much of the evidence of which Wise complains is "other acts" evidence admissible under Ohio Revised Code § 2945.59 which provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Of course, the rape statute, Ohio Revised Code § 2907.02, contains an exception for evidence admissible under Ohio Revised Code § 2945.59. Testimony of the victim A.T. of which Wise complains is relevant to show Wise's "scheme, plan, or system": the sexual misconduct occurred when A.T. visited his sister's apartment in Clifton on various occasions over several years. Sometimes the misconduct consisted merely of fondling A.T. or of putting A.T.'s hand on his genitals, but on a number of occasions, it proceeded to oral sex. (See Magistrate Judge's summary of testimony at Report, Doc. No. 18, PageID 662-63). This testimony evidences no violation of Ohio Revised Code § 2945.59.

Wise also asserts he can excuse any procedural default by proving he has suffered a miscarriage of justice (Objections, Doc. No. 22, PageID 686-89). He claims that on an initial habeas petition, a defendant need only show a "miscarriage of justice" from the trial record and need not produce any new evidence. *Id.* at 687.

It is true that the phrase "miscarriage of justice" has a general meaning of "[a] grossly unfair outcome in a judicial proceeding, as when a defendant is convicted despite a lack of evidence on an essential element of the crime." Black's Law Dictionary (10th ed. 2014). But the phrase is not used in that generic sense in habeas corpus. In *Calderon v. Thompson,* 523 U.S. 538 (1998), the Court held the "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence. In other words, they are the same standard, not alternative ways of avoiding a procedural default. And proving the actual innocence exception to procedural default definitely requires new evidence.

> "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup [v. Delo]*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House [v. Bell]*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met).

*Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005).

Upon reconsideration in light of the Objections, the Magistrate Judge again concludes Ground One should be dismissed with prejudice.

**Ground Two: Insufficient Evidence**

In his Second Ground for Relief, Wise asserts his conviction rests on insufficient evidence. The Warden defended this claim on the merits and the Report concluded the First District's conclusion on direct appeal was entitled to deference under 28 U.S.C. § 2254(d)(1) (Report, Doc. No. 18, PageID 661-63).

Wise's argument is that there is insufficient testimony of specific acts of sexual conduct to convict him of the charges in the indictment. In part he argues that the victim's testimony is not definite enough as to time and actual conduct. In part he relies on his argument that evidence of sexual contact short of sexual conduct is irrelevant to prove the charges and should have been excluded under Ohio Revised Code § 2907.02. This combination of objections is developed at great length over twenty pages (Objections, Doc. No. 22, PageID 691-711).

First of all, as noted above with respect to Ground One, A.T.'s testimony about sexual contact is admissible under Ohio Revised Code § 2945.59 to show Wise's plan or scheme. Testimony about acts of sexual conduct does not have to start with description of the sexual conduct itself; it is perfectly permissible to put the sexual conduct in context by testifying about the sexual contact which led up to it, which is what A.T. did.

Secondly, while there must be testimony of actual acts of sexual conduct to support conviction, they need not be in specific words. For example, Wise complains about A.T.'s use of the word "might" in the following testimony:

> Q. Okay. And, again, you said it would basically happen the same way. We're talking about the summer of 2001, tell us what happened those specific time [sic].
>
> A. He would take my pants down while I was sleeping, and either just touch my penis while I was pretending to be asleep, or

7

> he might take it farther and put my penis in his mouth or maybe take my hand and put it down his pants.

(Trial. Tr. Vol. 2 at, Return of Writ, Doc. No. 11-4, PageID 308-09.)  A.T. was twelve that summer. *Id.* at PageID 309.  Of this testimony Wise complains "[e]vidence is legally required to be specific in nature to each element of each separate charge.  This testimony is not specific to any incident and cannot uphold any charge, much less two separate ones." (Objections, Doc. No. 22, PageID 691-92), *citing Kidwell v. United States*, 38 App. D.C. 566, 1912 U.S. App. LEXIS 2172 (D.C. Cir. 1912).  *Kidwell* is over one hundred years old and evinces attitudes about sexual abuse of minors which are no longer tolerated at law, particularly allowing the defendant to attack the character of the minor victim and show acts of sexual misconduct with other persons.

No claim of lack of specificity in the testimony was made on direct appeal.  All Wise said in that regard was:

> In the case at bar, the jury found Mr. Wise guilty of all charges relating to the alleged sexual crimes against [A.T.], despite the fact that these alleged events had occurred at least 7 years previous, there was absolutely no physical evidence tying Mr. Wise to these alleged crimes, [A.T.] admitted he needed assistance with the time-line of when these events allegedly occurred (which meant he needed assistance with recalling how old he was at the time), and Mr. Wise was acquitted of the allegations concerning J.R..

(Appellant's Brief at Return of Writ, Doc. No. 11-1, Ex. 10, PageID 100.)

In response to the claim of insufficient evidence, the State on appeal summarized the testimony presented:

> Wise was convicted of two counts of Rape under R.C. 2907.02(A)(l)(b). The indictment alleged that he engaged in fellatio between June 1st and July 31st and again between August 1st and August 20th 2001, while [A.T.] was less than thirteen years old. He was also convicted of Unlawful Sexual Conduct with a Minor under R.C. 2907.04(A). The indictment alleged that during the summers of 2002 and 2003, Wise engaged in sexual conduct

> with [A.T.] when he knew, or was reckless in that regard, that [A.T.] was between 13 and 16 years old and that Wise was ten or more years older.
>
> [A.T.] testified about the abuse he withstood for years at the hands of his brother-in-law. He was specific in describing the locations, circumstances, time frames and details of Wise's actions. A.T.'s visits, along with J.R., to Rachel's home were corroborated by Rachel's testimony. She explained her relationship with her siblings and about the numerous times they spent the night at her house in the company of herself and her husband. Rachel told of the different homes in which they lived over the years, all of which matched A.T.'s descriptions of the events, down to the furniture in the rooms where Rachel lived. A.T.' s memory of his age and year in school pinpointed the fact that he was less than 13 during the time of the rapes and between 13 and 16 when the unlawful sexual conduct occurred. The jury heard his explicit descriptions of Wise performing oral sex on him while A.T. lay in his bed. The jurors also heard of the undressing, touching, masturbation and oral sex that Wise perpetrated upon his victim. This abuse even included the pitiful act of putting the hand of a sleeping child on Wise's own penis as the child lay on a .couch.

(Appellee Brief at Return of Writ, Doc. No. 11-1, Ex. 11, PageID 155.)

A.T.'s testimony is sufficiently specific to withstand constitutional scrutiny. The Sixth Circuit has noted the difficulty with child abuse cases:

> This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. See *Isaac v. Grider,* 211 F.3d 1269, 2000 WL 571959 at *5 (four months); *Madden v. Tate,* 830 F.2d 194, 1987 WL 44909, at *1-*3 (6th Cir. 1987) (six months); see also *Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir. 1992) (six months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (three years); *Parks v. Hargett,* 1999 U.S. App. LEXIS 5133, 1999 WL 157431, at *4 (10th Cir. 1999)(seventeen months).

*Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005). While that observation was made with respect to specificity in the indictment, the court also recognized the difficulties with specificity in child testimony:

9

> [Y]oung victims in abuse cases like this one "have only a limited perception of time and limited faculties to define specific dates and times of the traumatic sexual abuse they endured." Resp.'s Br. at 2. As the Ohio Court of Appeals decision emphasizes, Ohio law supports this position. See *State v. Daniel,* 97 Ohio App. 3d 548, 556, 647 N.E.2d 174 (1994) ("It is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity."); *State v. Mundy,* 99 Ohio App. 3d 275, 296, 650 N.E.2d 502 (1994) ("In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time.").

*Valentine, supra,* at 632.

Wise has not shown that the court of appeals decision on this claim was an objectively unreasonable application of clearly established Supreme Court law. It is therefore again respectfully recommended that Ground Two be dismissed with prejudice.

**Grounds Three and Four: Manifest Weight and Excessive Sentence**

The Report also recommends dismissing Grounds Three and Four. Wise makes no objection to those recommendations.

**Evidentiary Hearing**

In his Objections, Wise requests an evidentiary hearing, although he does not state what evidence he would present at such a hearing (Objections, Doc. No. 22, PageID 710-11). He relies on *Townsend v. Sain*, 372 U.S. 293, 313 (1963). The standard in *Townsend* has been

10

replaced by the Antiterrorism and Effective Death Penalty Act of 1996 and specifically by 28 U.S.C. § 2254(e). In *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011), the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 1399. An evidentiary hearing in this Court to re-hear the evidence presented in state court would be directly contrary to *Pinholster*.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends the petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

Jul 30 2014 11:52 AM



X _____
Michael R. Merz

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).